**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
-------------------------------------------------------X
In re:

KARA HOMES, INC., et al.,

|  |  |
|---|---|
| | Chapter 11 |
| | Case No: |
| | 06-19626 (MBK) |

                          Debtors.
-------------------------------------------------------X
KARA HOMES, INC. AND
KARA AT HAWKINS RIDGE, LLC
                    Plaintiffs.
          v.                                  Adv. Pro.:
                                          07-1057 (MBK)

CENTURY KITCHENS, INC., et al
                    Defendants.
-------------------------------------------------------X
KARA HOMES, INC. AND
THE LANDINGS AT MANAHAWKIN, LLC
                    Plaintiffs.
          v.                                  Adv. Pro.:
                                          07-1058 (MBK)

CENTURY KITCHENS, INC., et al
                    Defendants.
-------------------------------------------------------X
KARA HOMES, INC. AND
KARA AT BUCKLEY ESTATES, LLC
                    Plaintiffs.
          v.                                  Adv. Pro.:
                                          07-1064 (MBK)

CENTURY KITCHENS, INC., et al
                      Defendants.
-------------------------------------------------------X
KARA HOMES, INC. AND
KARA AT MT. ARLINGTON I, LLC
                    Plaintiffs.
          v.                                  Adv. Pro.:
                                        0 7-1066 (MBK)

CENTURY KITCHENS, INC., et al
                    Defendants.
-------------------------------------------------------X

KARA HOMES, INC. AND
KARA AT NAVESINK, LLC,

                Plaintiffs.

      v.                                                 Adv. Pro.:
                                                    07-1067 (MBK)

CENTURY KITCHENS, INC. et al

                Defendants.

-------------------------------------------------------X

KARA HOMES, INC. AND
KARA AT GLEN EYRE, LLC,

                Plaintiffs.

      v.                                                 Adv. Pro.:
                                                    07-1069 (MBK)

BUILDERS FIRSTSOURCE -
NORTH EAST GROUP, INC., et al

                Defendants.

-------------------------------------------------------X

**OPINION**

**APPEARANCES:**
David L. Bruck, Esquire
Greenbaum, Rowe, Smith, et al.
PO Box 5600
Woodbridge, NJ 07095
Attorneys for the Debtors

Russell S. Burnside, Esquire
Greenberg Dauber Epstein & Tucker
One Gateway Center
6 th Floor
Newark, NJ 07102
(973) 643-3700
Attorneys for R&R Construction Co., Inc.

Ronald M. MacFarland, Esquire
1778 Rte 47, Eldora
Woodbine, NJ 08270
(609) 861-5388
Attorneys for Fortune Insulation Contractors

Melinda D. Middlebrooks, Esquire
Middlebrooks Shapiro & Nachbar, P.C.
1767 Morris Avenue
Suite 2A
Union, NJ 07083
908-687-6161
Attorneys for Mac Electrical Contractors, Inc.

Joseph H. Mulherin, Esquire
Large, Scammell & Danziger
118 Main St.
Flemington, NJ 08822
(908) 782-5313
Attorneys for Samuel Stothoff Co., Inc.

Timothy P. Neumann, Esquire
Broege, Neumann, Fischer & Shaver
25 Abe Voorhees Drive
Manasquan, NJ 08736
(732) 223-8484
Attorneys for Michael J Wright Construction Co., Inc.

Steven I. Pfeffer, Esquire
Levin, Shea & Pfeffer
2105 West County Line Road
Suite 3
Jackson, NJ 08527
Attorneys for A&M Harrison Construction Co., Inc.

Jerrold N. Poslusny, Jr., Esquire
Cozen O'Connor
LibertyView, Suite 300
457 Haddonfield Road
Cherry Hill, NJ 08002
(856) 910-5000
Attorneys for Wagner Electric Corporation

Martha Suhayda-Vogt, Esquire
Law Office of Martha A. Vogt
72 Broad Street
Matawan, NJ 07747
(732) 583-0900
Attorney for The Esposito Group, Sakoutis Brothers Disposal, Marlboro Lawn & Landscaping
and James R. Ietile, Inc.

Peter E. Zimnis, Esquire
Law Office of Peter E. Zimnis
1245 Whitehorse Mercerville Rd.
Suite 412
Trenton, NJ 08619
609-581-9353
Attorney for PKP Contracting Inc.

---------------------------------------------------------------------------------------------------------------------------

**MICHAEL B. KAPLAN, U.S.B.J.**

## MEMORANDUM DECISION

## I. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the

Standing Order of Reference issued by the United States District Court for the District of New

Jersey on July 13, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A) and

(K).  Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

## II. FACTS AND PROCEDURAL HISTORY

On October 5, 2006 (the "Petition Date"), Kara Homes, Inc. ("Kara") filed with the Court

a voluntary petition under Title 11, Chapter 11, United States Code (the "Bankruptcy Code").

On several dates thereafter, fifty-six (56) of Kara's affiliates[1] (the "Affiliated Debtors," and

collectively with Kara, the "Debtors")  filed voluntary petitions under Chapter 11 of the

Bankruptcy Code.   The Affiliated Debtors, with but one exception, own separate real estate

---

[1] The following Affiliates filed for chapter 11 protection, which cases are being jointly administered: Bergen Mills Estates, LLC, 06-19758; Country Club Estates by Kara, LLC, 06-19744; Estates at Galloway Woods, LLC, 06-19746; Hartley Estates by Kara, LLC, 06-19759; Horizons at Birch Hill, LLC; 06-19767; Horizons at Woodlake Greens, LLC, 06-19745; Horizons at Woods Landing, LLC, 06-19760; Kara at Buckley Estates, LLC, 06-19742; Kara at Crine West, LLC, 06-19770; Kara at Dayna Court, LLC, 06-19743; Kara at the Glen Eyre, LLC, 06-19765; Kara at Hawkins Ridge, LLC, 06-19757; Kara at Lacey, LLC, 06-19738; Kara at Mt. Arlington I, LLC, 06-19780; Kara at Mt. Arlington II, LLC, 06-19782; Kara at Navasink, LLC, 06-19737; Kara at Park Ridge Estates, LLC, 06-19783; Kara at the Tradewinds, LLC, 06-19741; Sterling Acres at Monroe, LLC, 06-19774; The Landings at Manahawkin, LLC, 06-19740; Winding Run Estates by Kara, LLC, 06-19764; Kara at Monroe, LLC, 06-21513; Woodland Estates at North Edison, LLC, 06-21512; Kara Homes at Enclave II, LLC, 06-22341; Kara At Atlantic Hills, LLC, 07-10489; Horizons At Shrewsbury Commons, LLC, Case No. 07-11496; Forest Edge Estates By Kara, LLC, Case No. 07-11941; Kara At Farrington Ridge, LLC, Case No. 07-11939; Limerick Estates By Kara, LLC, Case No. 07-11937; Kara At Orchard Meadows, LLC, Case No. 07-11932; Summerfield Estates By Kara, LLC, Case No. 07-11928; and Kara At Freehold, LLC, Case No. 07-11924, Kara Service Company, LLC, Case No. 07-22183  (collectively, the "Affiliate Debtors").

development projects for the construction of single family homes and condominiums (the

"Projects").  The Debtors' bankruptcy cases have not been substantively consolidated but are

jointly administered pursuant to orders previously entered in these cases.  Since the filing dates,

the Debtors have remained in possession of their assets as debtors-in-possession pursuant to

Sections 1107 and 1108 of the Bankruptcy Code.  On October 23, 2006, the United States

Trustee appointed the Official Committee of Unsecured Creditors.

Prior to the Petition Date, Kara entered into Subcontractor Agreements with various

contractors (the "Defendants") who provided goods and/or services to construct improvements to

the Projects owned by each of the Affiliated Debtors.  When the Debtors failed to make payment

for the goods and/or services, the Defendants took steps to protect their rights pursuant to the

requirements of New Jersey Construction Lien Law (the "Lien Law").  In most cases, the

Debtors filed their respective petitions before the Defendants could fully complete all of the

requirements set forth under the Lien Law.

On January 15, 2007 the Affiliated Debtors filed twenty-three (23) adversary proceedings

to determine the extent, validity and priority of liens and, in essence, to void the Defendants'

construction lien claims.  On May 11, 2007, the Debtors filed Motions for Partial Summary

Judgment in six (6) of the adversary proceedings seeking to determine the validity of the

Defendants construction liens and recoup expenses and damages, in some instances.  In its

moving papers, Debtors separate the Defendants into four (4) categories based upon the

Defendants' pre-petition collection and lien enforcement efforts: those that (a) filed Construction

Liens ("CL's") only, (b) filed CL's and Notices of Unpaid Balance ("NUB's"), ( c) filed NUB's

only and (d) filed NUB's and proceeded with AAA arbitration[2]. The extent and priority of any liens determined to be valid are issues the Debtors plan to deal with at confirmation, currently scheduled for September 12, 2007, or at some point thereafter. Several Defendants, including all of those falling into category (d), above, entered into settlement agreements with the Affiliated Debtors. Some remaining Defendants cross moved for summary judgment or opposed the Motion. Oral argument on the motions was heard on August 24, 2007. On that date the Debtors agreed to defer, until a later date, the issue of the attorneys fees sought in their motions.

## III. DISCUSSION

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "In deciding a motion for summary judgment, the judge's function is to determine if there is a genuine issue for trial." Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 637 (3d Cir. 1993). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Huang v. BP Amoco Corp., 271 F.3d 560, 564 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Once the moving party establishes the absence of a genuine issue of material fact, however, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted). In determining whether a factual dispute warranting trial exists, the court must view the record

---

[2]The Court notes that the Lien Law does not specifically require an arbitration conducted by AAA. Pursuant to N.J.S.A. 2A:44A-21(b)(3) the parties can "otherwise agree in writing to an alternative dispute resolution mechanism." The parties are free to choose any method of alternative dispute resolution. Indeed, even a game of "rock, paper, scissors" has been given judicial imprimatur as an acceptable dispute resolution mechanism. See Order, Avista Management, Inc., vs. Wausau Underwriters Insurance Co. Case No. 6:05-cv-1430-Orl-31JGG (M.D.F.L. June 6, 2006).

evidence and the summary judgment submissions in the light most favorable to the non-movant.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Issues of material fact are those

"that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.

An issue is genuine when it is "triable," that is, when reasonable minds could disagree on the

result. Matsushita, 475 U.S. at 587.

The parties have not identified any material issues of fact which would bear upon the

issues presented to the Court or would be necessary for the Court to consider in deciding these

motions.

**1.**      **Residential versus Commercial Liens.**

The threshold issue in this matter is whether the Subcontractor Agreements are

"residential construction contracts" ("RCC") as defined in the Lien Law. N.J.S.A. 2A:44A-3

entitles contractors, subcontractors or suppliers who provide work, services, material, or

equipment pursuant to a contract to a lien for the value of work or services performed or

materials or equipment furnished in accordance with the contract.  The purpose of the Lien Law

is to help secure payment to those who provide work, services, material or equipment pursuant to

a written contract, and protect the rights of property owners who have met their financial

obligations under the contract so that they do not become responsible for double payment for

work and materials.  Labov Mechanical, Inc. v. East Coast Power, L.L.C., 337 N.J. Super. 240,

244 (App. Div. 2005).

Where goods and/or services are provided pursuant to a non-residential construction

contract, the construction lien attaches when filed. N.J.S.A. 2A:44A-10.  However, when

services are provided pursuant to a "residential construction contract," separate provisions of the

7

Lien Law apply, which are found in N.J.S.A. 2A:44-20 and 21, and require completion of the

process outlined therein before a lien can be filed.  N.J.S.A. 2A:44A-2 defines "residential

construction contract" as

> "any written contract for the construction or improvement to a one or two family
> dwelling, or any portion of the dwelling, which shall include any residential unit
> in a condominium subject to the provisions of P.L. 1969, c. 257 (C.46:8B-1 et
> seq.), any residential unit in a housing cooperative, any residential unit contained
> in a fee simple townhouse development, any residential unit contained in a
> horizontal property regime as defined in section 2 of P.L. 1963, c. 168 (C.
> 46:8A-2), and any residential unit contained in a planned unit development as
> defined in section 3.3 of P.L. 1975, c.291 (C. 40:55D-6)."

N.J.S.A. 2A:44A-5 (c) specifically prohibits a lien claim from attaching, or even being filed for

that matter, "for work, services, material or equipment furnished pursuant to a residential

construction contract unless there is strict compliance with sections 20 and 21 of this act."   The

aforementioned sections offer a form for a NUB and the process according to which it is

determined whether the lien claim is valid.  Clearly, any lien claim arising from a residential

construction contract will fail if the party does not follow the procedures laid out in the statute.

N.J.S.A. 2A:44A-15 provides that lien claims that are not filed in accordance with the provisions

of the act shall be forfeited.  Thus, it is imperative that a party filing a lien claim do so in the

proper form and according to the applicable procedures outlined in the statute.

The Debtors argue that since the Subcontractor Agreements are residential in nature, the

process for lien perfection begins with the filing of a NUB, proceeds to arbitration and then, if

granted permission by the arbitrator, is completed by filing a construction lien.  Thus, in the

Debtors' view, in order for the Defendants to have a valid lien, more than just the filing of a

NUB is required.  The Defendants argue that the RCC provisions of the Lien Law apply only to

the provision of services or goods for a single one or two family dwelling, and not the multitude

8

of housing units the Debtors build as part of a project.

Surprisingly, in the more than ten (10) years since the passage of the Lien Law, which significantly revised the previous New Jersey mechanics lien laws, very few courts have had occasion to address the RCC provisions of the Lien Law.  Indeed, case law on the issue of whether a contract for work within a large scale residential project is considered a "residential construction contract" is virtually non-existent in the State of New Jersey.  Given the historical expansion of the residential real estate market in New Jersey during this period, there were enough profits for all involved in the construction of residential homes to satisfy any competing lien claims without litigation.  The current downturn in real estate will no doubt present New Jersey courts with ample opportunity to address this statute.   The parties have directed the Court's attention to four instances where the New Jersey Superior Courts have decided the issue, in unpublished opinions. These cases are informative, but not instructional and are discussed below.

In MM-Beachfront v. Fritze Keyspan, Transcript of Motion, Docket No. MON-L-3088-05 (N.J. Sup. Ct., Monmouth Cty. October 5, 2005), defendant-contractor was hired by the plaintiff-owner to install heating, ventilating, air conditioning and plumbing within individual units of a condominium complex.  After dealings between the plaintiff and defendant soured, defendant then filed two construction liens on said units.  Plaintiff then filed a motion to proceed summarily and to invalidate those liens.  Plaintiff argued that because the defendant provided services with respect to residential units, the defendants were required to meet additional requirements under N.J.S.A. 2A:44A-21, which it failed to do.  In opposition, the defendant-contractor argued that it performed work on an entire condominium project and

therefore was not subject to further requirements in filing its liens.  In granting plaintiff's motion,

the Court held:

> "It is clear, I mean, clear beyond any doubt, that the defendant's
> work was on individual units.  And that is precisely what <u>N.J.S.A.</u>
> 2A:44A is meant to cover.  By not following the additional rules
> for construction liens, as outlined by the statute, the protection of
> consumers in purchasing their units within this complex was
> jeopardized."  (<u>MM-Beachfront</u>, at p. 31-32).

In <u>A. Fiore Services, Inc. v. Pottersville Properties</u>, Statement of Reasons, Docket No.

SUS-L-26-05 (N.J. Sup. Ct., Sussex Cty. March 28, 2005), plaintiff-contractor filed a

construction lien on defendant-owner's townhouse construction project, which defendant-owner

sought to discharge by way of motion.  Defendant argued that the project was residential in

nature and therefore plaintiff's lien was invalid.  In determining that the project was, in fact,

residential, the Court held:

> "A reading of <u>N.J.S.A.</u> 2A:44A-18 compels the conclusion that there
> would be no need for the existence of the lien release provisions set forth in this
> section of the Construction Lien Law, if the Legislature intended the scope of a
> "Residential Construction Contract" to be limited as argued by the plaintiff in this
> case.  The only logical and reasonable conclusion is that "Residential
> Construction Contracts" includes large-scale residential projects, including the
> type of townhouse development project of the owner in this case."  (<u>A. Fiore</u> at p.
> 9)

In <u>Maddox v. K. Hovnanian at South Brunswick, LLC</u>, Transcript of Decision, Docket

No. MID-C-134-06 (N.J. Ch. Middlesex Cty. December 1, 2006), plaintiff-contractor supplied

materials to a project owned by defendant-builder.  Plaintiff was not paid in full and filed a

construction lien encumbering several lots on the project.  Plaintiff moved for summary

judgment on the issue of lien validity since the defendant failed to file a NUB and otherwise

follow the requirements of the Lien Law pertaining to residential construction contracts.  The

10

Court found that residential portions of the Lien Law were applicable after looking to the plain language of the statute, as well as the legislative findings to support its decision.  The Court noted that the statute was intended to cover contracts involving developments on homes on numerous lots. (Maddox at p. 5)

Lastly, in Vista Realty v. R&R Construction, Transcript of Order to Show Cause, Docket No. MRS-L-981-05 (N.J. Sup. Ct., Morris Cty. May 20, 2005), plaintiff-property owner filed an Order to Show Cause to have the construction lien filed by defendant-contractor vacated. Defendant filed a construction lien for unpaid work on a 336 unit residential condominium project.  On the return date for the Order to Show Cause, the parties argued the issue of whether the project was residential or commercial in nature.  The Court looked at the plain language of the statute and, in contrast to the previous cases, found the project to be commercial in nature because of its size.  The Court noted this as "significantly different than the construction of a single family or two family home."  Id. at p. 23.

It is clear from the varying interpretations and rulings in these cases that the issue of whether a large scale residential project is residential or commercial in nature is unsettled and the analysis arbitrary.  For the reasons set forth below, after consideration of the statutory text and legislative findings, this Court determines that the Subcontractor Agreements are "residential construction contracts" and, as such, the provisions of the Lien Law pertaining to same apply in this case.

N.J.S.A. 2A:44A-2 clearly indicates that the RCC provisions are to apply to the construction of one or two family dwellings.  However, that is where the clarity ends.  The Lien Law does not contemplate the quantity of one or two family dwellings required to exempt a

project from the added requirements for residential construction contracts.  It has been argued

that the use of the term "**a** one or two family dwelling" (emphasis added) or "residential **unit**"

(emphasis added) is indicative of the legislature's intent to limit the definition to just that: a

single one or two family dwelling.  Defendants suggest that if the provisions apply to multiple

single family or two family dwellings, the drafters would have added an "s" to the terms "unit"

or "dwelling".  Defendants, however, ignore the obvious-had the drafters added the "s" to these

terms, it is likely that there would be contractors ready to argue that the RCC provisions apply

only to large scale projects and not to single housing units.  A result clearly at odds with the

legislative findings underlying the statute.  When the literal impact of the text of a statute is

inconsistent with the legislative meaning or leads to absurd results, a modification by the Courts

may be warranted.  State v. Costagliola, 144 N.J. Super. 589, 598-599 (Cty. Ct. 1976).  In the

best of all worlds, the legislature would have employed terms such as "unit(s)" and "dwelling(s)"

in the statute which would have satisfied any ambiguity.  The Court will not permit inartful

drafting to impede the legislative policy behind the statute.  Where the plain language of a statute

is cast into doubt by other evidence of intent, such intent must be given effect regardless of the

language deficiencies.  Id. at 599.

It is clear to this Court that the drafters' use of singular or plural terms in the statute is not

dispositive as to the competing interpretations put forward by the parties.  Where two competing

interpretations suggest themselves, the judicial inquiry is directed to ascertaining the intention of

the legislature.  U.S. v. Brandenburg, 144 F.2d 656, 660-661 (3d Cir. 1944).  Where the intent of

the legislature as to the correct interpretation is not apparent on the face of the statute, the court

must scan the legislative history of the enactment in order to determine the legislative purpose.

<u>Data Access Systems, Inc. v. State</u>, 63 N.J. 158 (1973); <u>Hudson Cty. News Co. v. Sills</u>, 41 N.J.

220, 226, <u>app. dism.</u>, 378 U.S. 583 (1964).  Thus, this Court has undertaken the requisite review

of the statute's legislative findings and has determined that the drafters failure to add an "(s)" to

"dwelling" or "unit" does not signify that the intent was to exempt multiple dwellings or units

from the protections offered by the added requirements of the residential provisions of the Lien

Law.  Rather, legislative findings indicate the opposite is true.

> "The Legislature finds that the ability to sell and purchase residential
> housing is essential for the preservation and enhancement of the economy of the
> State of New Jersey and that while there exists a need to provide contractors,
> subcontractors and suppliers with statutory benefits to enhance the collection of
> money for goods, services and materials provided for the construction of
> residential housing in the State of New Jersey, the ability to have a stable
> marketplace in which families can acquire homes without undue delay and
> uncertainty and the corresponding need of lending institutions in the State of New
> Jersey to conduct their business in a stable environment and to lend money for the
> purchase or finance of home construction or renovations requires that certain
> statutory provisions as related to the lien benefits accorded to contractors,
> subcontractors and suppliers be modified.  The Legislature further finds that the
> construction of residential housing generally involves numerous subcontractors
> and suppliers to complete one unit of housing and that the multiplicity of lien
> claims and potential for minor monetary disputes poses a serious impediment to
> the ability to transfer title to residential real estate expeditiously. "

<u>N.J.S.A.</u> 2A:44A-21

The goal of the Lien Law is protect all participants in the housing market: the buyers, the

sellers, the contractors, the lenders and most importantly, the economy.  The legislature sought to

prevent any impediment on the transfer of residential real property.  Regardless of whether the

Projects are considered commercial or residential, liens encumbering the units would certainly

affect the ability to transfer title.  This would not only limit the Debtors ability to sell the units

but any subsequent purchasers ability to do the same.  This is exactly what the legislature sought

to avoid.

The Defendants draw the Court's attention to the legislature's use in the legislative

findings, of the word "minor" regarding the monetary disputes the Lien Law seeks to prevent.

Counsel argues that the Lien Law is designed to prevent liens from being filed where disputesd

amounts total only hundreds of dollars.  The Court does not agree. What the drafters deemed

"minor" is not expressed in the statute.  "Minor" is a relative term and, in some instances, a

dispute over tens of thousands of dollars can be minor, depending on the value of the home.

New Jersey is home to some of the most expensive houses in the United States[3].  Moreover, the

mere fact that the legislature develops a mechanism to accommodate minor disputes, does not,

without more, evidence an intent to exclude larger monetary disputes.

In its efforts to ascertain the legislative intent behind the statute, the Court must consider

any history which may be of aid.  New Jersey Pharmaceutical Assoc. v. Furman, 33 N.J. 121,

130 (1960).  In this regard, this Court cannot ignore the certification submitted by Richard M.

Baron, Esq.[4] on behalf of two Defendants who have since entered into Settlement Agreements

with the Debtors.  Mr. Baron was one of the actual drafters of the Lien Law and states that one of

the ambiguities in the Lien Law was the difference between residential and non-residential

construction.  Mr. Baron certifies further that multi-family developments such as those built by

the Debtors, were intended to be covered by the residential provisions.  Only projects intended

for residential development but for which permission for subdivision had not yet been obtained,

were to be excluded from the residential provisions.  As Mr. Baron points out, and this Court

---

[3]An Alpine, N.J. residence was the most expensive home sold in the United States in 2006 according to the Institute for Luxury Home Marketing.

[4]Mr. Baron's certification is found at Docket No.32 in Adversary Proceeding No. 07-1058 and was referenced by Debtors counsel at oral argument.

finds relevant, the Debtors' recorded master deed provides notice of the intended residential nature of the project.  This information should have put any contractor or other party on notice of same.

Finally, this Court, in reaching its decision, adopts the compelling reasoning enunciated by Judge McGovern in A. Fiore Services, Inc., supra, in rejecting a contractor's argument that the NUB filing requirements do not apply to larger projects.  Judge McGovern noted that such an argument is undercut by the legislature's inclusion of lien release provisions in Section 18 of the Lien Law.  It is well established that a statute should be construed so that effect is given to all of its provisions, so that no part will be inoperative or superfluous, void or insignificant.  2A Sutherland, Statutory Construction, §46.06 (7th Ed. 2007). (footnotes omitted).  The language of the Lien Law and the legislative findings, as written in the statute and taken as a whole, indicates that work done in a large scale residential construction project pursuant to a residential construction contract is residential in nature.  As such, the Defendants are subject to the provisions set forth in N.J.S.A. 2A:44A-20 and 21.

> **2.**     **Requirements of NUB's and Retroactivity.**

In light of the Court's determination that the contracts at issue are residential construction contracts, it follows that the provisions of the Lien Law requiring that NUB's be filed apply in this case.  N.J.S.A. 2A:44A-20 provides that valid lien claims filed shall only have priority over any prior interest only if the claimant has filed a NUB with the county clerk.  The lien claims of the Defendants that did not file a NUB are invalid for the failure to comply with the requirements of the Lien Law.  In addition, where a NUB was filed after the Petition Dates, the NUB is in fact a nullity and not valid against the Debtors.

With respect to R&R Construction's cross motion for summary judgment, R&R argues that if the Court is inclined to adopt the reasoning presented by the Debtors, as it clearly has, the Court should apply its ruling prospectively as R&R relied on the only decision known to it at the time, that of Judge Dumont, in <u>Vista</u>, <u>supra</u>. The issue of whether a judicial decision should be applied retroactively has recently been addressed by the New Jersey Supreme Court. In <u>Malinowski v. Jacobs</u>, 189 N.J. 345 (Jan. 29, 2007), the Court noted:

> [J]udicial decisions generally apply retroactively. <u>Green v. Auerbach Chevrolet Corp.</u>, 127 N.J. 591, 600, 606 A.2d 1093 (1992). We depart from that general principle and turn to prospective application when "considerations of fairness and justice, related to reasonable surprise and prejudice to those affected" counsel us to do so. <u>N.J. Election Law Enforcement Comm'n v. Citizens to Make Mayor-Council Gov't Work</u>, 107 N.J. 380, 388, 526 A.2d 1069 (1987)(citation and quotation marks omitted). "Accordingly, prospective application is appropriate when (1) the decision establishes a new rule of law, by either overruling past precedent or deciding an issue of first impression, and (2) when retroactive application could produce substantial inequitable results." <u>Velez v. City of Jersey City</u>, 180 N.J. 284, 297, 850 A.2d 1238 (2004).

<u>Malinowski</u>, 189 N.J at 352.

Applying the two-prong test enunciated in <u>Malinowski</u>, this Court finds that its ruling should be applied retroactively to all parties, including R&R Construction. As to the first prong, the Court has found neither New Jersey Appellate Court cases nor New Jersey Supreme Court cases that specifically address the issue at hand. Therefore, the Court is satisfied that this is an issue of first impression with no past precedent.

With regard to the second prong, however, it cannot be said that retroactive application of the Court's ruling will produce substantially inequitable results. First, the mere fact that other

similarly situated creditors correctly followed the requisite statutory procedures suggests that

R&R and others could have complied as well. As noted in <u>Malinowski</u>, "[a] statute is no less

clear merely because those who should abide by its dictates decide to disregard them."

<u>Malinowski</u>, 189 N.J at 353. Secondly, R&R could have easily protected itself both by filing a

construction lien as it did, as well as filing NUB's and proceeding to arbitration. Lastly, even if

R&R knew at the time it filed its construction lien on October 4, 2006, a day before the

bankruptcy filing, that the Court would adopt the reasoning presented by Debtors, R&R would

have had insufficient time to file its NUB's and proceed to arbitration. Stated another way, even

if R&R had the benefit of the Court's ruling at the time it filed its construction lien, it would not

have been able to comply. Therefore, it cannot now claim that it is prejudiced by the Court's

ruling.

### 3.    <u>Substantial Compliance.</u>

The Debtors argue that the claims of the Defendants that filed both CL's and NUB's are

invalid and should be discharged as nullities for failure to name the proper Debtor.   The

Defendants that responded to this argument assert that they were unaware that there was a

specific entity other than Kara that they were contracted to work for and, as a result, listed the

true owner of the Projects incorrectly.  For example, Defendant Whitman Construction named

parent Kara Homes, Inc. rather than subsidiary Kara at Navesink, LLC as the owner of the real

property on the filed NUB.  The Court finds these types of errors to be <u>de</u> <u>minimus</u>.  The

enormity of the Debtors' operation and multiple affiliate structure are sufficiently complex, so as

to confuse a contractor as to exactly which of the entities for which it specifically contracted.  As

long as the NUB is served on the Debtors, as required by <u>N.J.S.A.</u> 2A:44A-8, and contains an

address the Debtors are able to identify as that of a Project or lot and block number it owns,

notice is sufficient and the NUB is valid.

## 4.     Creation and Perfection of a Lien.

The Debtors argue that a valid and enforceable lien does not exist unless the entire

process outlined in the Lien Law is completed prior to the commencement of a case under the

Bankruptcy Code.  Defendants have argued that the filing of a NUB creates an "interest in

property" and sections 546 and 362 of the Code allows parties to proceed, post-petition, to

perfect those interests.

Section 545 of the Bankruptcy Code usually permits a trustee to avoid the fixing of

certain statutory liens on the debtor's property "if such lien was not perfected or enforceable

against a hypothetical bona fide purchaser that purchases such property on the Petition Date."

Schoonover Electric Co., Inc. v. Enron Corp., et al., 294 B.R.232, 236 (S.D.N.Y. 2003).

Notwithstanding this basic proposition, Bankruptcy Code Section 546(b) provides an exception

to this general rule. Section 546 provides in pertinent part:

> (b)(1) The rights and powers of a trustee under sections 544, 545,
> and 549 of this title are subject to any generally applicable law
> that—
>> (A) permits perfection of an interest in property to be effective
>> against an entity that acquires rights in such property before the
>> date of perfection…

11 U.S.C. Section 546(b)(1)(A).

Further, the perfection referenced in Section 546 is an act exempted from the automatic

stay of Bankruptcy Code Section 362 which provides in pertinent part:

> (b) The filing of a petition under section 301, 302, or 303 of this
> title…does not operate as a stay—

18

* * *

> (3) under subsection (a) of this section, of any act to perfect, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title…

11 U.S.C. Section 362(b)(3).  The net effect of these two provisions is to authorize an entity to perfect an "interest in property" after the filing of the petition to the extent state law provides for perfection to relate back to the pre-petition interest. In the matter of Perona Brothers, Inc., 186 B.R. 833, 837 (D.N.J. 1995); citing, Makoroff v. City of Lockport, N.Y., 916 F.2d 890, 892 (3d Cir. 1990) and Equibank, N.A. v. Wheeling-Pittsburgh Steel Corp., 884 F.2d 80, 85 (3d Cir. 1989); see also, Yobe Electric, Inc. v. Graybar Electric Co., Inc. (In re Yobe Electric, Inc.), 728 F.2d 207 (3d Cir. 1984).

In Enron, the U.S. Bankruptcy Court for the Southern District of New York became the only court yet, in a reported decision, to interpret New Jersey's Construction Lien Law in the context of Sections 545(2) and 546(b)(1)(A). In the Enron case, an electrical contractor argued that its construction lien filed post-petition should fall within the section 546(b)(1)(A) exception to section 545 and, therefore, "relate back" to the date the contractor provided its services. Id. Contrary to the contractor's arguments, and following an extensive review of the Lien Law, the Enron court held that the contractor's lien was not enforceable against the trustee simply because the contractor had not filed any claim pre-petition to establish an interest in real property to which the permitted post-petition perfection could relate back.  Id at 239. The court held that the "filing" was critical to establish the electrical contractors rights, and that "such contractor does not obtain the requisite interest in property until he or she has actually filed." Id.  This Court does not disagree with the analysis set forth in Enron.  The simple fact of the matter is that the

Enron holding does not address the facts presented in the case sub judice.  Enron did not involve

construction liens that arose from a residential construction contract but, instead, involved

industrial property.  The issue for resolution which remains is whether the filing of a NUB

creates a sufficient "interest in real property" that permits perfection post-petition.

The filing of a NUB serves as notice of an impending lien claim.  In order to have a valid,

perfected lien, N.J.S.A. 2A:44A-21 requires parties to a NUB to participate in an arbitration,

unless an alternative dispute resolution mechanism was previously agreed upon in writing.

Among the issues for the arbitrator to decide are whether the NUB is in compliance with the

statute and the validity of the lien claim which may be filed pursuant to the NUB.  In essence,

the arbitrator reviews documentation, can hear testimony and argument, fixes amount and

validity of lien and gives the "thumbs up or down" to lienholders to go ahead and file the lien.

Prior to this determination, it is clear that a valid lien does not exist.  N.J.S.A. 2A:44A-21(b)(8)

provides that "upon determination by the arbitrator that there is an amount which, pursuant to a

valid lien, shall attach to the improvement" and makes it clear that a lien is not valid unless and

until the arbitrator finds it to be so.  The Court views this process as more than mere perfection;

rather it goes to the heart or creation of the lien and/or interest[5] and until there has been a

resolution of the arbitration, the lien has not been created.  Indeed, arbitrators can deny the

claimants ability to create a lien.

Section 362(b)(3) does not except the creation of a lien, but does permit the lienholder to

perfect, maintain, and continue the perfection of its lien. The failure of section 362(b)(3) to refer

---

[5]The Court regards the distinction between the use of the term "lien" in section 362(a)(4) and "interest" in section 546(b) to be of little or no consequence.  The only interest in the real estate that a contractor or supplier seeks to secure is that of a lienholder, as opposed to other recognized real estate interests such as ownership, tenancy or possession.

20

to the creation of liens is a significant one.  In order to be excepted from the automatic stay, a

creditor's underlying interest must be created prior to the filing of petition, and the interest need

only be perfected after the petition date.  See In Re New England Carpet, 26 B.R. 934, 939

(Bankr. D. Vt. 1983)  There is a distinction between acts to create liens and acts to perfect

certain types of liens that relate back.  A lien arises when it attaches; thereafter, it is an

unperfected lien until perfection. Once perfected, if there is a relation-back, its priority is

measured either from attachment or from a date that follows attachment, but precedes perfection

of the lien.  See James N. Duca, The Interaction Between Mechanic's Lien Law and the

Bankruptcy Code, 53 Bus. Law. 1283, 1285 (August 1998) [(citing UCC § 9-312 (codified as

N.J.SA. 12A:9-312)].  In other words, the right to a lien during the period before lien attachment

is considered nothing more than a personal cause of action held by the lien claimant, which

grants no interest in property until the steps necessary for lien attachment have been completed.

See Id. [(citing J. T. Evans Co. v. Fanelli, 157 A.2d 36 (N.J.Super.L. Div. 1959)].  In this case, a

lien is not created until an arbitrator makes such a determination.  In fact, section 8 of the form

"Award of The Arbitrator" provided by AAA to its arbitrators, requires an arbitrator to indicate

whether a lien claim is invalid or valid and to specify the amount of the valid lien therein.

Unless and until the arbitrator awards the lien claim, no valid lien exists.[6]

The Court finds that the NUB does not create a lien interest sufficient to meet the

pre-petition property interest requirement under section 546(b) and that the further requirements

of the Lien Law serve to create the lien.  Post-petition perfection of a lien is permitted under the

---

[6] The Court is cognizant that the Lien Law also permits parties to file a NUB with respect to non-residential projects, in order to establish lien priority once the construction lien has been filed properly.  In this situation, where there is no requirement for arbitration (or other dispute resolution mechanism), the filing of the NUB would create an interest subject to later perfection.

21

Code but post-petition creation of a lien is not.  Therefore, unless a Defendant has filed it's NUB

and obtained an arbitration award of a valid lien, sufficient "interest in real property" is not

created.

## IV.  CONCLUSION

For the reasons set forth above, this Court finds the Subcontractor Agreements to be

"residential construction contracts" requiring any lien claimant to comply with the appropriate

provisions of the Lien Law.  Only those lien claimants awarded a valid lien by an arbitrator prior

to the Petition Dates can be said to have a valid and enforceable pre-petition lien.  The Court

grants the Debtors motions for partial summary judgment and denies the cross-motions filed by

certain Defendants, but for any portions adjourned to a later date.  Debtors are to submit

appropriate orders.


Dated: August 29, 2007

Honorable Michael B. Kaplan
United States Bankruptcy Judge